**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lyle Andersen, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DIRECTV Incorporated, et al.,<br><br>    Defendants. | No. CV-14-02307-PHX-SRB<br><br>**ORDER** |

At issue is Defendant's Motion for Summary Judgment ("MSJ") (Doc. 115).

## I. BACKGROUND

Defendant DIRECTV is the largest provider of satellite televisions in the United States and installs and services DIRECTV systems through its owned and operated division ("O&O" or "DIRECTV Home Services") using W-2 technicians and third-party contracting technicians. (Doc. 116, Def.'s Statement of Uncontroverted Material Facts in Support of MSJ ("DSOF") ¶¶ 1-2; Doc. 125, Pls.' Resp. to DSOF ("PRSOF") ¶¶ 1-2.)[1] DIRECTV entered into written Service Provider Agreements with certain contractors for the contractors to provide fulfillment services. (DSOF ¶ 3; PRSOF ¶ 3.) The Agreements were "intended to create independent contractor relationships . . . not intended to create an employment relationship." (DSOF ¶ 4; PRSOF ¶ 4.) The contracting providers agreed to comply with all applicable federal, state, county, and municipal laws and to fulfill

---

[1] Plaintiffs also submitted an additional statement of facts. (Doc. 126, Pls.' Statement of Add'l Facts in Opp'n to MSJ ("PSOF").)

work orders for the installation and servicing of DIRECTV satellite television receiving systems pursuant to the terms of the Service Provider Agreement. (DSOF ¶¶ 6-7; PRSOF ¶¶ 6-7.) Plaintiffs Andersen, Avalos, Azlin, Bell, Hunsberger, Lay, Lopez, Meza, Mixon, Mortensen, Ondrey, Postulka, Rosiles, Richards, Sandefer, Young, Bleecker, and Chiero[2] worked for their respective contracting companies installing and servicing DIRECTV satellite television receiving systems. Plaintiffs filed a complaint alleging that DIRECTV violated the Fair Labor Standards Act ("FLSA") by not paying them minimum wage or compensating them for overtime worked and DIRECTV moves for summary judgment on their claims. (Doc. 30, First Am. Compl. ¶ 3; *see* MSJ.)

## II. LEGAL STANDARDS AND ANALYSES

### A. Independent Contractor

DIRECTV argues that Plaintiffs are not DIRECTV employees as a matter of law but are independent contractors of entities contracted to perform installation and maintenance services for DIRECTV systems. (MSJ at 2.) Plaintiffs argue that under the FLSA's economic reality test, DIRECTV is their employer. (Doc. 133, Pls.' Opp'n to MSJ ("Opp'n") at 3.) Plaintiffs further argue that the Court need not consider whether Plaintiffs are independent contractors before analyzing whether DIRECTV is their joint employer. (*Id.* at 4.)[3] Courts have adopted an expansive interpretation of the definitions of "employer" and "employee" under the FLSA, in order to effectuate the broad remedial purposes of the Act. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

> The courts have identified a number of factors which may be useful in distinguishing employees from independent contractors for purposes of social legislation such as the FLSA. Some of those factors are:
> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;

---

[2] Plaintiff Ian Elmore was terminated as a party on July 14, 2016 after stipulation of the parties although his names still appears on filings by Plaintiffs. (*See* Doc. 95, July 14, 2016 Order.)

[3] Because each analysis provides an independent basis for liability under the FLSA, the Court will conduct both analyses in determining whether summary judgment in favor of DIRECTV is appropriate.

- 2 -

> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.
>
> The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends "upon the circumstances of the whole activity."

*Id.* (quoting *Rutherford Food Corp v. McComb*, 331 U.S. 722, 730 (1947)). There are competing decisions on whether technicians installing DIRECTV satellite services are independent contractors. *Compare Roslov v. DirecTV Inc.*, 218 F. Supp. 3d 965, 974 (E.D. Ark. 2016) (concluding that technicians were independent contractors) *with Perez v. Lantern Light Corp.*, No. C12-01406 RSM, 2015 WL 3451268, at *15 (W.D. Wash. May 29, 2015) (denying summary judgment in favor of DIRECTV).

### 1. Control

DIRECTV argues that it did not exert the degree of control, specifically human resources control, necessary to evidence an employer relationship. (MSJ at 6-7.) Plaintiffs argue that DIRECTV's mandatory rules, policies, and practices dictated every aspect of their job from installation to interacting with customers to how to clean up after themselves. (Opp'n at 6.) Plaintiffs also argue that DIRECTV's distinction between human resources and quality control is irrelevant. (Opp'n at 6-7.) The type of control necessary is not settled in the Ninth Circuit. DIRECTV provides case law that requires more than quality control. *See Roslov v. DirecTV Inc.*, 218 F. Supp. 3d 965, 974 (E.D. Ark. 2016) ("While DirecTV's installation standards and uniform requirements certainly provided expectations, installation specifications and quality control measures are 'entirely consistent with the standard role of a contractor who is hired to perform highly technical duties.'") (quoting *Herman v. Mid–Atl. Installation Servs.*, 164 F. Supp. 2d 667, 672 (D. Md. 2000)); *see also Moreau v. Air France*, 356 F.3d 942, 950–51 (9th Cir. 2004) (finding that there is no indication that Air France had the authority to directly "control" any of the workers, but would instead communicate any complaints about

performance to the service company's supervisors and that the indirect supervision or control exercised by Air France over the ground handling employees was purportedly to ensure compliance with various safety and security regulations, such as ensuring that food equipment was properly stowed or that the plane's load was adequately balanced because it would be "remiss to simply delegate a task to another party and not double-check to verify that the task was done properly.")

DIRECTV cites, among other things, Plaintiff Hunsberger's testimony stating that he was "pretty much left to himself"; Plaintiff Andersen having his own company that he used to complete roof repairs; Plaintiff Postulka noting that he had discretion to determine which job should be completed first to show that Plaintiffs had control over their schedules and autonomy performing their tasks; Plaintiff Richards stating that he only spoke to AAI employees, a contracting company, about onboarding; and Plaintiff Avalos stating that he never received a memo or communications directly from DIRECTV. (Doc. 116-2, Ex. 29 Andersen Dep. 49:15-50:19; Doc. 116-1, Ex. 13 Hunsberger Dep. 125:4-14; Doc. 116-1, Ex. 23 Postulka Dep. 155:16-156:7; Doc. 116-2, Ex. 43 Avalos Dep. 271:2-10; Doc. 116-1, Ex 25 Richards Dep. 46:24-48:2.) Plaintiffs offer evidence of mandatory ongoing training, credential requirements, and disciplining to show that DIRECTV controlled how and when Plaintiffs would complete installations. (Doc. 136-6, Ex. 90 Cox Dep. 36:18-37:20; Doc. 136-4, Ex. 88 Burns Dep. 44:21-25.) Plaintiffs have raised a genuine dispute of material fact regarding the amount of control DIRECTV exerted. It is arguable that DIRECTV's supervision, review processes, check-in system, and scheduling practices show that DIRECTV exercised control over the manner and method of Plaintiffs' work.

### 2. Profits and losses

DIRECTV argues that Plaintiffs controlled their own profits and losses by managing their calls. (MSJ at 7-8.) Plaintiffs argue that their full-time schedule precluded them from controlling their profits and losses in any meaningful way. (Opp'n at 8-9.) DIRECTV's evidence shows that some Plaintiffs could control their costs to affect profits

by using different retailers for equipment or buying a gas efficient vehicle and that others performed work for other satellite companies like DISH Network. (Doc. 116-1, Ex. 20 Ondrey Dep. 206:12-207:18, 111:18-112:24, 84:2-85:12; Doc. 116-1, Ex. 18 Mortensen Dep. 201:15-202:24; Ex. 13, Hunsberger Dep. 323:14-324:2, 331:21-25.) Plaintiffs presented case law demonstrating that those frugal choices are not evidence of managerial skill. *See Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824 JWS, 2015 WL 1299369, at *5 (D. Ariz. Mar. 23, 2015) ("[A]lthough selecting a fuel-efficient vehicle will likely reduce a driver's costs over the long run, there is little "managerial skill" involved in that decision). In *Roslov*, however, the court found that the plaintiff was in control of his profits and losses when there were no agreements guaranteeing Roslov a certain income level each week, he could take on additional work orders to make more money, hire other technicians to help him work orders, or work another technician's order to supplement his own income. *Roslov*, 218 F. Sup. 3d at 977. Plaintiffs further presented evidence that while one Plaintiff performed one installation for DISH Network, another testified that he was "too busy" with DIRECTV work to perform other jobs. (Doc. 128-8, Ex. 23 Ondrey Dep. 84:24-85:15; Doc. 127-5, Ex. 8 Lay Dep. 37:5-11, 18-22.) There is a genuine issue of material fact whether Plaintiffs' managerial skills could have an effect on their profits and losses.

### 3. Investment in Business

DIRECTV argues that Plaintiffs made sizeable investments in tools, materials, and vehicles to operate their business installing satellite television. (MSJ at 8.) Plaintiffs argue that their investment is dwarfed by DIRECTV's investment. (Opp'n at 9-10.) There is no dispute that Plaintiffs invested in their business by buying tools and supplies to complete installations. (Ex. 23 Postulka Dep. 73:23-76:3; Ex. 18 Mortensen Dep. 201:15-203:13; Ex. 20 Ondrey Dep. 200:17-203:25; Ex. 25 Richards Dep. 159:2-14.) However, the Ninth Circuit has considered an independent contractor's investment in comparison to the investment of the contracting company. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) (finding that the appellants' investment in light equipment

hoes, shovels and picking carts was minimal in comparison with the total investment in land, heavy machinery and supplies necessary for growing the strawberries); *see also Torres-Lopez v. May*, 111 F.3d 633, 643-44 (9th Cir. 1997) (same). However those cases were only in the farming context and compared the companies' investment in land and larger equipment with the farmworkers investment in "simple hand-held tools." *Torres-Lopez*, 111 F.3d at 644.

In *Moreau*, the court found the subcontractor's investment greater than that of the contracting company because "[a]lthough Air France provided some equipment, such as the food trays and baggage pallets, this equipment was minimal in comparison to the large kitchen equipment or heavy cargo loading equipment found on the ground. It is also obvious why the ground companies would not provide these items, which would be transported to a foreign country and out of the ground companies' control." 356 F.3d at 951. Plaintiffs present evidence of DIRECTV's investment of 35 million dollars to upgrade their Siebel system. (Doc. 137-3, Ex. 86 Baker Dep. 164:5-13.) Plaintiffs offer no other evidence of DIRECTV's investment. Unlike the farming cases, DIRECTV made no investment in the equipment necessary for Plaintiffs' daily tasks. Plaintiffs have not created a dispute of material fact on this prong.

### 4. Special Skill

DIRECTV argues that satellite installation requires special skill. (MSJ at 8-9.) Plaintiffs argue that their work does not require the special skill described in *Torres-Lopez* necessitating "initiative, judgment or foresight." (Opp'n at 10-11.) DIRECTV offers various Plaintiffs' testimony that installing satellite television services requires specialized skill. (Doc. 116-2, Ex. 35 Azlin Dep. 77:7-12; Doc. 116-2, Ex. 34 Bleecker Dep. 75:25-76:8; Ex. 23 Postulka Dep. 122:4-25; Ex. 13 Hunsberger 118:22-24; Ex. 29 Andersen Dep. 65:13-25.) The parties offer competing case law for what kind of skill is required. *Compare Herman v. Mid-Atlantic Inc.*, 164 F. Supp. 2d 667, 675 (D. Md. 2000) (Indeed, "[t]he skills involved in cable installation and service are akin to carpentry and electrical work.") *and Scruggs v. Skylink, Ltd.*, No. 3:10-0789, 2011 WL 6026152, at *7

(S.D. W.V. Dec. 2, 2011) ("Workers in these trades—including [cable installers]—are traditionally designated as independent contractors.") *with Perez v. Lantern Light Corp.*, No. C12-01406 RSM, 2015 WL 3451268, at *15 (W.D. Wash. May 29, 2015) ("The Court finds the work to be skillfully performed by well-trained Installers, but piece-work requiring no initiative, judgment or foresight for its success, nonetheless.") Plaintiffs offer evidence showing that their work did not require initiative, judgment or foresight because once they obtained DIRECTV requisite skill their work was dictated by DIRECTV. (Doc. 127-8, Ex. 12 Bleecker Dep. 231:16-232:11; Doc. 128-10, Ex. 26 Bell Dep. 37:14-44:25.) Plaintiffs' evidence, however, does not show that satellite installations do not require initiative, foresight, or judgment as the task is completed. Plaintiffs used initiative and judgment when they encountered difficulties installing the satellite dishes like how to run the wires or placing the dish in a more ideal location. (Ex. 23 Postulka Dep. 122:19-124:4; Doc. 116-2, Ex. 28 Young Dep. 120:21-24; Doc. 116-2, Ex. 39 Mixon Dep. 140:4-141:5.) Plaintiffs were also required to gain special certification before working for DIRECTV. (Doc. 116-2, Ex. 42 Meza Dep. 107:16-108:20, 198:19-200:17.) There is no genuine issue of material fact as to this factor.

### 5. Relationship

DIRECTV argues that Plaintiffs did not have a contract with DIRECTV and did not have exclusivity provisions in their agreements with the Contracting Companies. (MSJ at 9-10.) Plaintiffs argue that the practical effect of DIRECTV's model precluded other work during that time period. (Opp'n 11-12.) DIRECTV's evidence shows that Plaintiffs could leave their contracting companies whenever they pleased without contacting DIRECTV first. (Ex. 13 Hunsberger Dep. 286:16-287:19; Ex. 20 Ondrey Dep. 255:22-256:12, 24:21-25:14 (stating that he performed a job for another company while performing installations for DIRECTV).) While Plaintiff argues that the practical effect was that no other employee could work for another employer, Plaintiffs cite to no case law showing that that is the appropriate test for the court to consider. *Roslov*, 218 F. Supp. 3d at 975 (concluding that because there was no evidence that he expected his

work to continue uninterrupted for any duration of time, he worked another job alongside his installation job, and testified that there were occasions when he had no work and that work orders fluctuated permanence was lacking even he worked for the Service Provider for many months); *see also Scruggs*, 2011 WL 6026152 at *7 ("The more permanent the relationship, the more likely the worker is to be an employee. Further, greater exclusivity may imply an employment relationship." (internal quotations omitted)). There is no genuine issue of material fact that Plaintiffs could and did terminate their employment when they pleased or that they could work for another employer albeit on their own time.

### 6. Integral to Business

DIRECTV argues that Plaintiffs were not integral to the function of DIRECTV. (MSJ at 10.) Plaintiffs argue that they were integral to the function of DIRECTV because the installation of the satellite dish is integral to the satellite television services DIRECTV offers and because the technicians are the "face of DIRECTV." (Opp'n at 11-12.) Again, the law here supports both parties' position. *Compare Roslov*, 218 F. Supp. 3d at 975 (the fact that a business depends on its independent contractors is not itself indicative of an employment relationship) *and Scruggs*, 2011 WL 6026152, at *8 (finding that although technicians are critical to cable providers, that factor alone cannot tip the scales because "[a] rule otherwise would transform any independent contractor into an employee simply because the work performed—whether the construction of a new warehouse, installation of phone lines, or creating new marketing materials—was important to the business") *with Perez*, 2015 WL 3451268, at *16 ("The Court finds that the evidence in this case results in a finding that the work of the Installers is not only integral, but the service could not be provided by DirecTV without the installation."). The Court concludes that there are genuine issues of material fact regarding whether Plaintiffs were integral to DIRECTV's business.

There are genuine issues of material fact regarding whether Plaintiffs are employees or independent contractors of DIRECTV. The Court therefore denies summary judgment on this ground.

### B. Joint Employer

DIRECTV argues that even if Plaintiffs were employees, they were not employees of DIRECTV. (MSJ at 10-11.) Plaintiffs argue that they were employees of DIRECTV. (Opp'n at 12-18.) When considering if two or more employers jointly employ someone for purposes of the FLSA, courts weigh four factors in consideration of the total employment situation and the economic realities of the work relationship: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985).

#### 1. Hire and Fire

DIRECTV argues that it did not have the power to hire and fire Plaintiffs because it was not involved in either the decision of the contracting companies to engage Plaintiffs nor consulted by Plaintiffs in their decisions to leave. (MSJ at 13.) Plaintiffs argue that DIRECTV controlled hiring by imposing pre-hire conditions and could fire by rerouting work from a technician or ceasing to send work orders to technicians. (Opp'n at 13-14.) The evidence shows that while DIRECTV gave contracting companies quality and control standards, the contracting companies were free to hire whomever they chose within those parameters. (Doc. 130-7, Ex. 27 KLS Service Provider Agreement ¶ B); *Roslov*, 218 F. Supp. 3d at 976 (finding company was not liable for alleged failure to pay overtime compensation in violation of FLSA, where company had little role in hiring technician, training was conducted by service provider, company had no supervision or control over technician, as he had flexibility throughout his day and could decide what he would work on or how he would work, it was service provider that controlled technician's pay, and company did not maintain any employment records for technician other than onside status data); *see also Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 689 (D. Md. 2010). The KLS Service Provider Agreement also shows that DIRECTV

reserved the right to approve their contracting companies' subcontractors, i.e. Plaintiffs, and the right to remove work from a contracting company's subcontractor. (Ex. 27 KLS Service Provider Agreement ¶ B.) Therefore, there is a genuine issue of material fact on whether DIRECTV had the authority to hire and fire Plaintiffs.

### 2. Supervision and control

DIRECTV argues that Plaintiffs were not supervised or controlled by them. (MSJ at 14-15.) DIRECTV again argues that the level of control needs to be human resources control and provides evidence that it did not exert that level of control over Plaintiffs. (MSJ at 15; Ex. 23 Postulka Dep. 127:6-130:7; Doc. 116-2, Ex. 31 Lay Dep. 77:5-10; Doc. 116-2, Ex. 28 Young Dep. 206:3-11; Ex. 34 Bleecker Dep. 121:16-123:3.) Plaintiffs argue that DIRECTV's rules, field supervisors, and weekly reports with metrics demonstrate that DIRECTV exerted supervision and control over them. (Opp'n at 13; Doc. 130-3, Ex. 7 Standard Professional Installation Guidelines; Doc. 136-3, Ex. 87 Quick Dep. 14:14-15:11; Doc. 131-1, Ex. 31 Morrison Dep. 160:23-161:9; Doc. 136-4, Ex. 88 Burns Dep. 109:7-110:25.) The Court agrees. As discussed above, there is case law that supports both positions on the type of control necessary. Such conflicting case law with evidence supporting both views creates genuine issues of material fact regarding whether DIRECTV exercised control over Plaintiffs, which is properly decided by a fact finder.

### 3. Rate and Method of Payment

DIRECTV argues that it did not set the rate nor determine the method by which Plaintiffs were paid. (MSJ at 16.) Plaintiffs argue that DIRECTV indirectly set the rate of payment by determining its method of payment with the contracting companies. (Opp'n at 14-15.) Plaintiffs further argue that DIRECTV's chargebacks were charged to Plaintiffs dollar for dollar by the contracting companies. (*Id.* at 15.) Again the parties present opposing case law supportive of their views. *Compare Roslov*, 218 F. Supp. 3d at 19 *with Perez*, 2015 WL 3451268, at *8-9. The Court concludes, however, that merely setting a rate at which the contracting company will be paid does not equate to setting the

rate the subcontracted Plaintiffs will be paid. *Jacobson v. Comcast,* 740 F. Supp. 2d 683, 691 (D. Md. 2010) ("An employee's income, received from its direct employer, will always be determined and influenced by what a contractor decides to pay the direct employer for services rendered by the employee. 'To find that this arrangement places Comcast in control of Plaintiffs' wages would dramatically expand the FLSA to subsume traditional independent contractor relationships.'") (citing *Herman,* 164 F.Supp.2d 667, 675 (D. Md. 2000)); *see also Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794, 804 (N.D. Ill. 2013) (same); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 129–30 (S.D.N.Y. 2011) ("[T]he test is whether a putative joint employer determines pay rates, not whether it affects them. To infer joint employment from the latter 'would dramatically expand the FLSA to subsume traditional independent contractor relationships.'" (quoting *Jacobson,* 740 F. Supp. 2d at 692)). DIRECTV does not have any direct control over Plaintiffs' rate or method of payment. There is no genuine issue of material fact on whether DIRECTV set the rate and method of payment by which Plaintiffs were paid.

### 4. Employment Records

DIRECTV argues that it kept no employment records on Plaintiffs and that the Siebel system's information does not resemble an employee file. (MSJ at 17-18.) Plaintiffs argue that the Siebel system is an employment file, noting that it kept background checks, employment screens, Plaintiffs' schedules, days off, training and certification history, and metrics of work performance. (Opp'n at 15-16.) Again there is competing case law on the level of information required to transform a quality control mechanism into a human resources employment record. *Compare Perez,* 2015 WL 3451268, at *12 ("Here, DirecTV's recordkeeping accomplished the purposes of establishing working conditions (by assigning Tech ID numbers to work orders), payroll (tracking completed work orders) and evaluating employee performance (compiling data into organized performance metrics).") *with Zampos*, 970 F. Supp. 2d at 805 (N.D. Ill. 2013) ("However, Comcast's retention of records—W & E technician badge

identification request forms; quality check forms; the Comcast Contractor Checklist, signed by W & E management, and submitted to Comcast, that includes personal information: contact information, social security numbers, licensing information, vehicle information, background check information, and drug screening information; and a list of technicians whose identifications numbers are to be terminated—"is only an extension of Comcast's [quality] control procedures.") *and Lawrence v. Adderley Indus., Inc.,* No. CV–09–2309 (SJF)(ETB), 2011 WL 666304, at *9 (E.D.N.Y. Feb. 11, 2011).

In *Zampos*, the court held that "[w]ithout the retention of these personnel and performance based records, Comcast could not ensure that W & E technicians are fit to enter customer's homes, that Comcast receives the services for which it is entitled, that the W & E technicians fulfilling installation services are authorized to do so, and that those plaintiffs failed to present any evidence that the maintenance of this type of information is used to exercise control over the work or working conditions of W & E technicians, or that Comcast retains these records for any purpose beyond quality control. 970 F. Supp. 2d at 805. The Siebel system stores work orders completed by Plaintiffs, Plaintiffs' work schedules and requested days off, Plaintiffs' telephone numbers, records of the training and certifications completed by Plaintiffs, their assigned supervisor, the DIRECTV site to which each Plaintiff is assigned, and numerous metrics tracking Plaintiffs' work performance. (Doc. 137-5, Ex. 94 Wells Dep. II 31:24–32:9 (work orders); 36:9–37:13 (work schedules and days off); 69:22–70:18 (training and certifications); 137:22–138:13 (explaining that Siebel tracked as separate data points for each technician their "technician phone number" and "technician work phone"); 151:1–7 (DIRECTV site technician assigned to)). There is a genuine dispute of material fact over whether the Siebel system stores so much information about Plaintiffs that it would be considered an employment file.

Taking these factors together with the *Torres-Lopez* additional factors, which were largely fleshed out in the "A. Independent Contractor" section above, there is a genuine issue of material fact of whether DIRECTV's level of supervision and control and

- 12 -

potential ability to hire and fire is sufficient to classify it as a joint employer. Because there are genuine issues of material fact, the Court denies DIRECTV's Motion on this ground.

### C. FLSA

DIRECTV further argues that even if Plaintiffs are DIRECTV employees, they have produced no evidence that DIRECTV knew or should have known that they were working unpaid overtime. (MSJ at 21.) Plaintiffs argue that they need only show that they performed work for which they were not properly compensated and that DIRECTV had notice of their hours via the Siebel system. (Opp'n at 20-21.)

#### 1. Amount of Overtime

DIRECTV argues that the Siebel system is not used to estimate hours worked and does not accurately reflect time spent on the job. (MSJ at 23.) DIRECTV further argues that it had no information for how Plaintiffs were paid so it could not have known if Plaintiffs were properly compensated for all hours worked. (*Id.* at 24.) Plaintiffs argue that DIRECTV had notice that Plaintiffs' workday began at 8:00 am and ended at either 5:00 pm or 6:00 pm totaling 50-60 hours per week. (Opp'n at 20-21.)

> An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946).

DIRECTV offers evidence that Plaintiff Andersen could not quantify the number of hours he worked; Plaintiff Avalos had only his word for estimating that he worked between 40 and 80 hours a week; Plaintiff Azlin did not track any of the hours he worked; and that Plaintiff Mortensen could not provide any documents of the chargebacks that were issued to him. (Ex. 29 Andersen Dep. 176:4-18; Doc. 116-2, Ex.

43 Avalos Dep. 228:22-230:11; Doc. 116-2, Ex. 35 Azlin Dep. 202:2-24; Ex. 18 Mortensen Dep. 223:12-225:2.) Plaintiffs offer testimony that they worked more than 40 hours almost every week, they spent time working that they were not paid for, and that their pay was subject to deductions. (Doc. 127-4, Ex. 6, Andersen Dep. 96:20-97:4; Doc. 127-9, Ex. 13 Azlin Dep. 128:22-25; Doc. 127-8, Ex. 12 Bleecker Dep. 125:7-13; Doc. 127-3, Ex. 5, Hunsberger Dep. 180:16-181:13; Doc. 128-6, Ex. 20 Chiero Dep. 179:11-180:22; Doc. 128-3, Ex. 17 Lopez Dep. 148:7-151:16.) Unlike *Holaway v. Stratasys, Inc.* that DIRECTV cites for support, Plaintiffs provided evidence that could show that they performed work for which they were not properly compensated. 771 F.3d 1057, 1059 (8th Cir. 2014) ("Holaway has failed to meet even the relaxed evidentiary standard because he failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked for Stratasys, let alone evidence of excess hours worked every week of his employment."). The Court concludes that Plaintiffs' evidence creates a genuine issue of material fact about whether Plaintiffs worked overtime. The Court does not grant summary judgment on this ground.

### 2. Willful Violation

DIRECTV argues that Plaintiffs have not supplied evidence sufficient to support their claim for a willful violation of the FLSA requiring the Court to impose a two year statute of limitations. (MSJ at 26-27.) Plaintiffs argue that DIRECTV's use of the HSP Network was for the purpose of avoiding obligations to pay them in accordance with the FLSA. (Opp'n at 23.) Plaintiffs further argue that DIRECTV's prior litigation could be used to support the position that they had notice of the potential FLSA violations. (*Id.* at 24.)

> Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the Secretary must prove that the employer's conduct was willful as that term is defined in both *Thurston* and this opinion . . . that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). "[A]n employer's mere negligence or a good faith—but incorrect—belief that they were in compliance with the

FLSA, are not sufficient to rise to the level of a willful violation." *Difilipino v. Barclays Capital, Inc.,* 552 F.Supp.2d 417, 425 (S.D.N.Y.2008). Whether a violation of the FLSA is willful is a question of fact. *Pignataro v. Port Authority of New York and New Jersey*, 593 F.3d 265, 273 (3d Cir. 2010). However, a plaintiff is required to present sufficient evidence that her employer willfully violated FLSA's overtime requirements; otherwise, summary judgment is appropriate. *Id*; *see also Fugate v. Dolgencorp, LLC*, No. 3:10-CV-344, 2012 WL 5268494, at *7 (N.D. Ind. Oct. 23, 2012), *aff'd on other grounds*, 555 F. App'x 600 (7th Cir. 2014).

Plaintiffs have not supplied any evidence creating a dispute of material fact regarding DIRECTV's willfulness. Evidence that a defendant created a contracting company for the purpose of avoiding FLSA compliance that was, in economic reality, a single enterprise may support a finding of willfulness. *See, e.g.*, *Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 919 (9th Cir. 2003); (Opp'n at 23). Plaintiffs have not provided any evidence that DIRECTV is a single enterprise with any of the contracting companies. Knowledge of other litigations, many of which have been decided in DIRECTV's favor, does not prove willfulness. *Fugate*, 2012 WL 5268494, at *7 ("The mere filing of lawsuits cannot be deemed sufficient to put Dollar General on notice that its policy is violative of the FLSA."). The Court will impose a two-year statute of limitations. Plaintiff Mixon's claims therefore entirely fail, and the Court grants summary judgment in favor of DIRECTV on his claims. (Mixon Dep. Ex. 1 (Mixon worked on DIRECTV installations from September 2009 to June 2010 and opted into the class action in September 2012, outside of the two-year statute of limitations).)

### 3. 207(i) Exemption

DIRECTV argues that the Court should grant summary judgment on two elements of the 207(i), retail establishment exemption. (MSJ at 27-28.) Plaintiffs argue that courts have denied summary judgment on this issue in similar cases. (Opp'n at 24-25.) In order to qualify for the 207(i) exemption, the defendant must show that "the worker's regular pay exceeds one and a half times the federal minimum wage"; "more than half his

compensation for a representative period (not less than one month) represents commissions on goods or services"; and he must be employed by "a retail or service establishment." *Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 366 (7th Cir. 2015); 29 U.S.C. § 207(i).

DIRECTV asks the Court to grant summary judgment in their favor on two out of the three required elements to meet the retail establishment exemption. The Court will not. Defendant has offered no evidence that it is a retail establishment, failing to present facts that meet the requirements the Ninth Circuit has set forth. *See Gieg v. DDR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005) (requiring that the work performed be recognized as retail in the industry and 75% of the dollar volume of the retail services must not be for resale). Further, it is not clear that Plaintiffs were paid a commission. *Matrai v. DirecTV, LLC*, 168 F. Supp. 3d 1347, 1364 (D. Kan. 2016) ("[A] commission system pays employees upon a sale, at a rate that is related to the price of the sale, and for work involving irregular hours."); Ex. 43 Avalos Dep. 105:22-106:16 (Avalos was paid more if he installed multiple receivers); Ex. 25 Richards Dep. 26:22-27:2 (same); Doc. 116-2, Ex. 39 Mixon Dep. 323:3-324:6 (Mixon was paid $5 for selling protection plans); Ex. 23 Postulka Dep. 57:15-21 (Postulka had a rate sheet that told him how much he was paid for each task). Plaintiffs present evidence, however, demonstrating that they were not paid a rate related to the price of the sale and case law that requires the commission be proportional to the price the customer paid. *See Wilks v. Pep Boys*, 278 F. App'x 488, 489 (6th Cir. 2008); *Huntley v. Bonner's Inc.*, No. C02-1004L, 2003 WL 24133000 at *3 (W.D. Wash. Aug. 14, 2003); (Doc. 134-8, Ex. 67 Altomari Dep. 69:24-70:13 (customers received installation services free of charge); Doc. 116-2, Ex. 50 Chiero Dep. 177:25-178:8 (stating that he was paid the same amount per installation regardless of the difficulty).) Finally, while DIRECTV sought summary judgment on the first two elements, it then argues that it meets the third element (1.5 times the minimum wage) for certain weeks with some Plaintiffs. (MSJ at 30.) As Plaintiffs point out, even though DIRECTV's calculations are at the high end of Plaintiffs' ranges, they do not account for

chargebacks or unreimbursed expenses. 20 C.F.R § 531.25 ("For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."). The Court denies summary judgment on this ground.

## III. CONCLUSION

The Court denies summary judgment on the issues of whether Plaintiffs are independent contractors, whether Defendant is Plaintiffs' joint employer, and whether the section 207(i) exemption applies because genuine issues of material fact exist. The Court imposes the FLSA's two-year statute of limitations because Plaintiffs have not presented any evidence of Defendant's willfulness. The Court grants summary judgment for Defendant against Plaintiff Mixon because his claim falls outside the two-year statute of limitations.

**IT IS ORDERED** granting in part and denying in part Defendant's Motion for Summary Judgment (Doc. 115).

Dated this 26th day of July, 2017.

_____
Susan R. Bolton
United States District Judge